WISCONSIN ELECTRICAL MANUFAC-
TURING CO., INC., Plaintiff,

v.

PENNANT PRODUCTS, INC., and County of Monroe Industrial Development Agency, Defendants.

No. 78–C–423.

United States District Court,
E. D. Wisconsin.

July 13, 1979.

Timothy G. Dugan, Warren L. Kreunen, Milwaukee, Wis., for plaintiff.

Patrick O. Dunphy, Milwaukee, Wis., for defendants.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action for damages arising out of an alleged breach by the Defendants Pennant Products, Inc. ("Pennant") and County of Monroe Industrial Development Agency ("CMIDA") of a contract for the sale of goods and/or services by the plaintiff Wisconsin Electrical Manufacturing Co., Inc. ("WEM") to the defendants. The plaintiff is a Wisconsin corporation, the de- fendant Pennant is a New York corporation, and the defendant CMIDA is a corporate governmental agency created under the laws of the State of New York. The matter is presently before the Court on defendants' motion to dismiss the complaint. Because it decides that it lacks personal jurisdiction over the defendants, the Court does not consider the other grounds for dismissal raised by the defendants.

In *Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.*, 597 F.2d 596 (7th Cir. 1979), the Court considered:

"\* \* \* whether the due process clause of the Fourteenth Amendment allows Wisconsin to assert personal jurisdiction over a nonresident corporation that has conducted no activities in Wisconsin. \* \* \*" (at 597)

In that case the defendant, a non-Wisconsin corporation, had contracted for the purchase of goods of substantial value from the plaintiff, a Wisconsin corporation, to be shipped f. o. b. plaintiff's plant in Milwaukee, Wisconsin, to the defendant in West Virginia. Negotiations for the contract were conducted by use of the mails and telephone, the purchase order was delivered to plaintiff in Milwaukee, and the goods were actually manufactured with defendant's knowledge by the plaintiff in Milwaukee, although the contract did not require manufacture in Wisconsin. The defendant had no other contacts with Wisconsin and did not maintain business facilities, property, bank deposits, or telephone listings in Wisconsin.

The court of appeals stated:

"The out-of-state defendant's contact with Wisconsin urged to be sufficient to satisfy the due process 'minimum contacts' test of *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), is the ordering of goods from a Wisconsin company with knowledge that they were likely to be manufactured in Wisconsin and shipped from there. \* \* \*" (at 600)

The court of appeals further stated:

"Viewed realistically, the contacts with Wisconsin in this case consist solely of

'[t]he unilateral activity of [one] who claim[s] some relationship with a nonresident defendant,' and this 'cannot satisfy the requirement of contact with the forum State.' *Hanson v. Denckla,* supra, 357 U.S. [235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)] at 253. Although Mountain State in a sense caused the activity in Wisconsin by placing the order, the contract between the parties left Lakeside in absolute control over where it would conduct that activity and it made this decision and conducted the activity unilaterally. * * * " (at 603)

It concluded that:

" * * * performance of contractual obligations by the plaintiff, not the defendant, in the forum state * * * is not sufficient, by itself, to confer jurisdiction over an out-of-state defendant, at least when the contract does not require the plaintiff to perform in the forum state. * * * " (at 601)

The court of appeals also noted that shipment f. o. b. Wisconsin does not establish a contractual obligation to perform a contract in Wisconsin, that use of interstate mail and telephone services is of no significance, that "formalities of contract execution are not determinative for purposes of jurisdiction" (at 604) and therefore the sending of a purchase order to Wisconsin is of little significance, and finally that "the dollar amount of the transaction can hardly be a principled basis for distinguishing between one case and another, let alone for ignoring the requirement, * * * that the defendant, not the plaintiff, conduct activities in the forum state." (at 604) See also *Management Science, Inc. v. Wilson Manufacturing Company,* 451 F.Supp. 963 (E.D. Wis.1978); *Balistrieri v. O'Farrell,* 324 F.Supp. 151 (E.D.Wis.1971).

In the case now before the Court the plaintiff WEM was contacted on June 23, 1977, by a sales engineer of the Fred D. Pfening Co., which had previously been contacted by Pennant, concerning a computer control system which WEM would manufacture and supply to Pfening for sale to Pennant. (Alton G. Bale, Jr., affidavit filed December 15, 1978, paragraph 5; Nathan Lewinger affidavit filed September 29, 1978, paragraphs 8–10.) Negotiations were thereafter conducted by use of the interstate mails and telephone directly between WEM and Pennant (Bale affidavit filed December 15, 1978, paragraph 5; Lewinger affidavit paragraphs 11 and 15); on one occasion a Pennant representative traveled to Wisconsin to examine WEM's facilities (defendants' brief filed September 29, 1978, at 2), and on one occasion a Pennant representative traveled to Wisconsin to discuss problems arising under the contracts (Alton G. Bale, Jr. affidavit filed May 29, 1979, paragraph 4(d) and (h)). On September 19, 1977, Pennant forwarded a purchase order for the computer control system to WEM in New Berlin, Wisconsin, and on October 7, 1977, WEM mailed an acknowledgement to Pennant. (Bale affidavit filed December 15, 1978, paragraph 5; Lewinger affidavit paragraphs 17, 19–20.) The purchase order provided for shipment f. o. b. plaintiff's plant in New Berlin, Wisconsin. (Bale affidavit filed December 15, 1978, paragraph 4 and exhibit "L".) Aside from those arising out of their contract with WEM, the defendants have had no other contacts with the State of Wisconsin and do not maintain offices, employees, or telephone listings in the State. (Lewinger affidavit paragraph 3; James H. Swanton affidavit filed September 29, 1978, paragraphs 4 and 5; plaintiff's brief filed December 15, 1978, at 3.)

Plaintiff attempts to distinguish this case from *Lakeside* by arguing that this contract, which involved the provision of computer hardware and software, was a contract for goods and services both and thus distinguishable from the contract in *Lakeside,* since the contract "involved the personal services of developing a custom designed system to meet Pennant's unique operation and in preparing the software-programming package rather than a standard product." (Plaintiff's supplemental brief filed May 29, 1979, subpart (4) at page 2.) The Court is not persuaded that the distinction is significant.

First, while the types of materials and expertise required to create a computer program may differ from those required to build, e. g., structural assemblies for use in the construction of a dam, both result in the creation of a saleable final product, and with regard to both, the contract between the parties contemplates a termination of their relationship once the product is delivered and the seller's obligations with regard to installation or assurance that the product meets contract specifications, whatever those obligations may be, are completed.

Second, while the plaintiff may be correct that the labelling of a contract as one for the sale of goods or services is less significant than the relationship which it creates between the parties, see *Lakeside Bridge & Steel Co.,* supra, at 600, even the provision of individualized services by a plaintiff in connection with the performance of its contract obligations will not suffice to establish personal jurisdiction over the defendant in the absence of other contacts between the defendant and the forum state. See *Orton v. Woods Oil & Gas Co.,* 249 F.2d 198 (7th Cir. 1957), cited in *Lakeside,* supra, at 599 note 4.

As in *Lakeside Bridge & Steel Co.,* supra, therefore, this is a case where:

"[v]iewed realistically, the contacts with Wisconsin * * * consist solely of '[t]he unilateral activity of [one] who claim[s] some relationship with a nonresident defendant,' and this 'cannot satisfy the requirement of contact with the forum State.' * * * " (at 603)

Indeed, the only relevant difference between the cases is that in this case two trips were made by a representative of the defendant Pennant to Wisconsin to inspect the plaintiff's facilities. It is a defendant's " 'other relationships' ", however, in addition to the transaction in issue "upon which the state's right to 'exercise jurisdiction over the defendant is likely to depend at least in part.' " (at 602) Since the two additional contacts present in this case which were not present in *Lakeside,* i. e., defendant Pennant's representatives' trips to Wisconsin, arose out of the subject transaction, and since there is no dispute that the defendants in this action have no relationship with the State of Wisconsin except that arising out of their contract with the plaintiff, the Court does not believe that the one additional factor present in this case is sufficient to distinguish it from *Lakeside.* Thus the Court finds that the due process clause of the Fourteenth Amendment does not allow Wisconsin, and therefore this Court sitting in diversity, to assert personal jurisdiction over the defendants to this action.

For the foregoing reasons,

IT IS ORDERED that the motion of the defendants Pennant Products, Inc. and County of Monroe Industrial Development Agency to dismiss the complaint for lack of personal jurisdiction is granted.