**WAUKESHA ENGINE DIVISION, DRESSER AMERICAS, INC., Plaintiff,**

v.

**BANCO NACIONAL DE FOMENTO COOPERATIVO, Defendant.**

No. 78–C–525.

United States District Court, E. D. Wisconsin.

Feb. 29, 1980.

Foley & Lardner by Robert A. Christensen & Michael P. Erhard, Milwaukee, Wis., for plaintiff.

Jose Nunez Castaneda, C. Satélite, Mexico, for defendant.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The plaintiff has moved for summary judgment with regard to this court's jurisdiction in this matter. For reasons which follow, the plaintiff's motion will be denied and this action will be dismissed.

The plaintiff, Waukesha Engine Division, Dresser Americas, Inc., filed this action on August 15, 1978, against Banco Nacional de Fomento Cooperativo (Banfoco), a Mexican government banking institution. Banfoco will be regarded in this decision as an agency of a sovereign foreign state. The plaintiff alleges that on or about July 8, 1974, Waukesha and Banfoco entered into a contract whereby Waukesha would manufacture and deliver 72 marine engines to Banfoco during the years 1975 and 1976. The contract called for "the price . . . to be F.O.B. ex factory from the plant that Waukesha has in the city of Wisconsin [sic], United States of America." Waukesha contends that in February, 1976, Banfoco repudiated that portion of the contract which pertains to the engines which were to be delivered in 1976. As a result of the defendant's alleged breach of contract, the plaintiff claims damages in the amount of $1,046,818.81, plus interest from February 1, 1976.

The record indicates that the complaint in this action was served in Mexico in compliance with 28 U.S.C. § 1608. In response to the complaint, the defendant's attorney wrote a letter to the Mexican court which participated in the service of the complaint, stating in part:

". . . it is evident that the Judge in Wisconsin, United States of America is not competent to know the present matter, for which reason specifically my client refuses to submit to the jurisdiction of the Courts of Wisconsin, United States of America as regards the present matter."

As a result of the defendant's response, the plaintiff has brought the instant motion for summary judgment on the issue of this court's jurisdiction. The plaintiff urges

that this court has jurisdiction to determine the question of jurisdiction. Despite notice of this motion from both the plaintiff and the court, the defendant has not filed a response to the instant motion.

The jurisdictional issue in this case must be considered in light of the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602–11. The Act establishes a comprehensive procedure whereby a plaintiff may bring a foreign state or one of its political subdivisions, agencies or instrumentalities before an American court, obtain a ruling on the sovereign immunity of that entity, and if immunity is found not to exist, secure an adjudication and satisfaction of its claims. The Act's central feature is its specification of categories of action for which foreign states are not entitled to claim the sovereign immunity from American court jurisdiction otherwise granted for such states.

28 U.S.C. § 1605(a) provides in part: "A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

\* \* \* \* \* \*

"(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; . . ."

28 U.S.C. § 1603 provides the following definitions:

"(d) A 'commercial activity' means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

"(e) A 'commercial activity carried on in the United States by a foreign state' means commercial contact with the United States."

Under the provisions of the Act, the questions of whether a court has personal jurisdiction over a foreign state and subject matter jurisdiction over a claim against such an entity are directly linked to whether the foreign state is immune with regard to the claim in question. 28 U.S.C. § 1330 provides in part:

"(a) The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.

"(b) Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title."

The plaintiff contends that the defendant's entry in the United States falls within the sovereign immunity exemption contained in 28 U.S.C. § 1605(a)(2), quoted above. In determining whether jurisdiction over the defendant and the claims against it are proper, I must consider whether the terms of the Act have been met and whether jurisdiction over the defendant would offend the usual standards of due process afforded to defendants.

It is plain from the legislative history of the Foreign Sovereign Immunities Act that due process notions of minimum contacts have been incorporated in the Act. *Carey v. National Oil Corp.*, 453 F.Supp. 1097 (S.D.N.Y.1978). The House Committee which reported on the Act stated:

"*Personal Jurisdiction.*—Section 1330(b) provides, in effect, a Federal long-arm statute over foreign states (including political subdivisions, agencies, and instrumentalities of foreign states). It is patterned after the long-arm statute Congress enacted for the District of Columbia, Public Law 91–358, sec. 132(a), title I, 84 Stat. 549. The requirements of

minimum jurisdictional contacts and adequate notice are embodied in the provision. Cf. *International Shoe Co. v. Washington*, 326 U.S. 310, [66 S.Ct. 154, 90 L.Ed. 95] (1945), and *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223 [, 78 S.Ct. 199, 2 L.Ed.2d 223] (1957)." H.Rep.No.94–1487, 94th Cong., 2d Sess. 13 (1976), U.S.Code Cong. & Admin.News, 1976, pp. 6604, 6612.

■ Thus, the relevant inquiry is whether Banfoco's contact with Wisconsin is sufficient to assert personal jurisdiction over it in this court. This inquiry is guided by the decision of the court of appeals in *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir. 1979). In that case the defendant, a non-Wisconsin corporation, had contracted for the purchase of goods of substantial value from the plaintiff, a Wisconsin corporation, to be shipped f.o.b. the plaintiff's plant in Milwaukee, Wisconsin, to the defendant's plant in West Virginia. The defendant had no other contacts with Wisconsin and did not maintain business facilities, property, bank deposits, or telephone listings in Wisconsin.

The court of appeals held that

". . . performance of contractual obligations by the plaintiff, not the defendant, in the forum state . . . is not sufficient, by itself, to confer jurisdiction over an out-of-state defendant, at least when the contract does not require the plaintiff to perform in the forum state." 597 F.2d at 601.

The court of appeals further stated:

"Viewed realistically, the contacts with Wisconsin in this case consist solely· of '[t]he unilateral activity of [one] who claim[s] some relationship with a nonresident defendant,' and this 'cannot satisfy the requirement of contact with the forum State.' *Hanson v. Denckla, supra*, 357 U.S. [235] at 253, 78 S.Ct. 1228 at 2586, 2 L.Ed.2d 1283. Although Mountain State in a sense caused the activity in Wisconsin by placing the order, the contract between the parties left Lakeside in absolute control over where it would conduct that activity and it made

this decision and conducted the activity unilaterally." Id. at 603.

The plaintiff attempts to distinguish *Lakeside* from the case at bar by pointing to the fact that in 1972 the defendant sent a group of its officers into Wisconsin to inspect the facility at which the engines in question would be made before contracting to buy the engines. In my judgment, the single inspection visit is not jurisdictionally significant. The defendant's primary contact with this state is that it contracted with a Wisconsin corporation for the production of engines which it likely knew would be produced in this state. The court of appeals for this circuit has held that such contact is insufficient to satisfy due process requirements with regard to personal jurisdiction. The fact that the defendant's officers conducted a single inspection here is a relatively minor additional contact with this forum which is not sufficient to create the minimal contacts necessary to satisfy due process requirements.

This conclusion is supported by the decision of Chief Judge John Reynolds in *Wisconsin Electrical Manufacturing Co. v. Pennant Products, Inc.*, 472 F.Supp. 855 (E.D. Wis.1979), a case directly in point with regard to the issue in question. In that case the plaintiff urged that two inspection visits to Wisconsin by representatives of the defendant were sufficient to distinguish the case from *Lakeside*. Judge Reynolds held that "the one additional factor present" in that case was insufficient to distinguish it from *Lakeside*. 472 F.Supp. at 858. *See also, First National Leasing Corp. v. Metz*, 485 F.Supp. 809 (E.D.Wis.1980).

Accordingly, the plaintiff's motion for summary judgment as to the court's jurisdiction in this case must be denied and this action must be dismissed.

Therefore, IT IS ORDERED that the plaintiff's motion for summary judgment as to the court's jurisdiction be and hereby is denied.

IT IS ALSO ORDERED that this action be and hereby is dismissed.