527 So.2d 931 (1988)
SOUTH CAROLINA INSURANCE GUARANTY ASSOCIATION, Appellant,
v.
Paula Renee UNDERWOOD, Appellee.
No. 87-2236.
District Court of Appeal of Florida, Fifth District.
June 30, 1988.
*932 Leslie King O'Neal of Markel, McDonough & O'Neal, Orlando, for appellant.
James E. Collins of Ayers, Cluster, Curry, McCall & Briggs, P.A., Ocala, for appellee.
COBB, Judge.
The issue in this case is whether the trial court erred in entering final summary judgment in favor of Paula Underwood against an out-of-state insurance guaranty association, and in denying the out-of-state insurance guaranty association's motion to dismiss.
A final judgment was entered by the Circuit Court for Marion County, Florida, in favor of Underwood against Louise C. Goodwin, a South Carolina resident, arising from an automobile accident in Ocala, Florida. South Carolina Insurance Guaranty Association was a statutory insurance guaranty association under the laws of South Carolina and provided liability insurance coverage in the Goodwin case. SCIGA was required under South Carolina law to act on behalf of Goodwin, when Goodwin's insurer, Standard Fire Insurance Company of Alabama (Standard Fire), became insolvent.[1] After South Carolina Insurance Guaranty Association (SCIGA) refused to pay the final judgment in the Goodwin case, Underwood filed a complaint against SCIGA alleging that she was a "third-party beneficiary" under the terms of the SCIGA policy. In response to Underwood's complaint, SCIGA filed a motion to dismiss on the grounds that the trial court lacked jurisdiction over SCIGA; the motion was denied. Underwood filed a motion *933 for summary judgment, which had attached to it a pre-trial order from the Goodwin litigation providing in pertinent part:
15. Insurance Coverage  The original insurance carrier in this case, Standard Fire Insurance Company of Alabama, became insolvent and coverage in the case is afforded by the South Carolina Insurance Guaranty Association. At the time of trial, no mention of insurance or insurance coverage shall be made to or in the presence of the jury.
The trial court granted Underwood's motion for summary judgment and entered final summary judgment in favor of Underwood.
According to SCIGA, "[t]here are no allegations in the Complaint that SCIGA conducted any activities in the State of Florida," and "the insurance policy does not require the insurer to perform any acts in Florida and thus [it] cannot form the basis for jurisdiction over SCIGA here." Underwood counters:
Underwood's Complaint shows that SCIGA provided liability insurance coverage in the Goodwin cause. SCIGA stipulated to this fact in the Pre-Trial Order, and directed the defense of the cause at trial. It does not offend concepts of fair play and substantial justice necessary to due process to now bring SCIGA into a Florida Court in an action seeking to pay the judgment rendered in the cause in which SCIGA participated and provided coverage.
Underwood further argues that jurisdiction over SCIGA is proper under section 48.193(1)(g), Florida Statutes (1985). Section 48.193(1)(g) provides for jurisdiction over a nonresident who breaches a contract by failing to perform acts required by the contract to be performed in this state.[2]
Under South Carolina law, SCIGA is obligated and is deemed the insurer to the extent of the covered claim existing prior to the determination of insolvency of the insurer, and arising within 30 days after the determination of insolvency. According to South Carolina Code Annotated sections 38-19-60(1)(a) and (b) (Law. Co-op. 1976):
(1) The association shall:
(a) Be obligated to the extent of the covered claims existing prior to the determination of insolvency and arising within thirty days after the determination of insolvency, or before the policy expiration date if less than thirty days after the determination, or before the insured replaces the policy or causes its cancellation, if he does so within thirty days of the determination, but such obligation shall include only that amount of each covered claim which is in excess of one hundred dollars and is less than three hundred thousand dollars, except that the Association shall pay the full amount of any covered claim arising out of a workmen's compensation policy. In no event shall the Association be obligated to a policyholder or claimant in an amount in excess of the obligation of the insolvent insurer under the policy from which the claim arises;
(b) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent;
Thus, because SCIGA was "deemed the insurer to the extent of its obligation," it became obligated on the covered claims for the insolvent insurer, Standard Fire Insurance Company of Alabama.
The question then becomes whether SCIGA breached a contract by failing to perform acts required by the contract to be performed in this state.
*934 In Meyer v. Auto Club Insurance Association, 492 So.2d 1314 (Fla. 1986), the plaintiff, then a Michigan resident, was involved in an automobile accident while visiting Florida. At the time of the accident, the plaintiff was insured by the defendant, a foreign corporation based in Michigan. Subsequent to the accident, the plaintiff became a Florida resident. The plaintiff sued the defendant in the Circuit Court for Pinellas County, seeking recovery under his insurance policy for medical and lost wage benefits. The defendant's motion to dismiss for lack of personal jurisdiction under Florida's long-arm statute, section 48.193, Florida Statutes (1983), was denied by the trial court. The Second District reversed, reasoning that the trial court could not exercise personal jurisdiction over the defendant because the requirements of section 48.193(1)(d) were not met.[3] The supreme court agreed with the Second District, finding that the defendant was a foreign corporation, authorized and licensed to do business in Michigan, and that the defendant neither maintained an office in Florida nor solicited business in Florida. According to the supreme court, "[i]n short, [defendant] had no contacts with Florida. That [plaintiff], while a Michigan resident, was involved in an automobile accident in Florida, or that he eventually moved to Florida, are mere unilateral acts by [plaintiff] and cannot, in and of themselves, provide [defendant] with the requisite minimum contacts mandated by the fourteenth amendment." Id. at 1315. In the present case, a claims supervisor for SCIGA submitted an affidavit stating that SCIGA was an insurance guaranty association created by and subject to the laws of South Carolina; that SCIGA had not been authorized to engage in business in Florida; and that SCIGA did not and had not maintained any offices nor solicited business in Florida.
In Kight v. New Jersey Manufacturers Insurance Company, 441 So.2d 189 (Fla. 5th DCA 1983), New Jersey Manufacturers Insurance Company, a foreign insurer, sold, in New Jersey, a motor vehicle policy to a New Jersey resident covering risks as to accidents occurring anywhere in the United States. Kight sued the nonresident insured and insurer in Florida as a result of an automobile accident that occurred in Florida and attempted to obtain service of process on the foreign insurer under the Florida long-arm statute. Kight appealed a nonfinal order quashing service of process attempted to be made on the foreign insurer under the Florida long-arm statute. This court affirmed, determining that "a foreign insurer's contract entered into in a foreign state insuring a foreign resident against liability resulting from an automobile accident occurring anywhere in the United States does not constitute such a minimum contact with all such states as is required by the federal constitutional due process requirement in order to confer in personam jurisdiction over the foreign insurer in any state where an accident may occur and liability arise." Id. at 190. In the present case, the insurance policy stated that it covered "accidents which occur during the policy period and within the United States of America, its territories or possessions, or Canada." The insurer and SCIGA are foreign entities and the contract was entered into in a foreign state, insuring a foreign resident against liability resulting from any automobile accident occurring anywhere in the United States. This did not constitute such a minimum contact with all such states as is required by the federal constitutional due process requirement in order to confer in personam jurisdiction over the foreign insurer or the foreign insurance guaranty association in any state where an accident may occur and liability arise.
Underwood contends that Meyer and Kight are distinguishable based on a "stipulation" that SCIGA entered into in the Goodwin case whereby it agreed to provide coverage. However, as indicated by the pertinent paragraph of the pre-trial order, set out above, SCIGA did not state that it was subjecting itself to the jurisdiction *935 of the Florida courts. The fact that SCIGA agreed to provide coverage in the Goodwin case was not an act by SCIGA creating the minimum contact necessary to support jurisdiction in Florida.
To satisfy the minimum contacts test, it is necessary that the defendant's conduct in connection with a foreign state be such that the defendant should reasonably anticipate being haled into court there. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The defendant must purposely avail itself of the privilege of conducting activities within the foreign state, thereby invoking the benefits and protections of the laws of that state. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). "[T]he constitutional touchstone" of the determination whether an exercise of personal jurisdiction comports with due process "remains whether the defendant purposely established `minimum contacts' in the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting International Shoe Company v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).
Where a contractual obligation forms the basis of the court's assertion of long-arm jurisdiction, the court must evaluate the parties' prior negotiations and contemplated future consequences, the terms of the contract, and the parties' actual course of dealings to determine whether a defendant purposely established minimum contacts with any forum. Burger King Corp. Here the contract was entered into in South Carolina, for services to be performed in South Carolina, and neither SCIGA nor Standard Fire availed itself of the privilege of conducting activities within Florida, thus failing to invoke the benefits and protections of Florida's law. Consequently, in the absence of any minimum contacts with Florida, SCIGA's motion to dismiss should have been granted, and the final summary judgment entered in favor of Underwood was improper.
Because of our determination that the trial court lacked jurisdiction over SCIGA, we do not address SCIGA's arguments concerning its liability to Underwood.
REVERSED AND REMANDED.
SHARP, C.J., concurs.
COWART, J., concurs specially with opinion.
COWART, J., concurring specially.
I concur. Appellant South Carolina Insurance Guaranty Association (SCIGA) is solely the creature of a South Carolina statute, and all of its "obligations" are solely statutory obligations imposed by the South Carolina statute. SCIGA has executed no contract involved in this litigation. The mere fact that one of SCIGA's statutory obligations is to fulfill the contractual obligations of an insolvent insurer does not convert SCIGA's statutory obligations and statutory duties into contractual obligations or contractual duties, the breach of which constitutes "[b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state," (emphasis added) as that language is used in section 48.193(1)(g), Florida Statutes, (1985).
NOTES
[1] The insurance policy with Standard Fire was signed in South Carolina, covering vehicles used in Goodwin's South Carolina business.
[2] Section 48.193(1)(g), Florida Statutes (1985), states in pertinent part:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
* * * * * *
(g) Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.
[3] Section 48.193(1)(d) grants Florida courts jurisdiction over persons who contract "to insure any person, property, or risk located within this state at the time of contracting."