100 So.2d 378 (1956)
Elizabeth Donner HANSON, Individually and as executrix, et al., Appellants,
v.
Katherine N.R. DENCKLA, Individually, et al., Appellees.
Supreme Court of Florida. Special Division A.
September 19, 1956.
*380 Caldwell, Pacetti, Robinson & Foster and Manley P. Caldwell, West Palm Beach, and William H. Foulk, Wilmington, Del., for Elizabeth Donner Hanson, Individually, as Executrix of the Will of Dora Browning Donner, Deceased, as Guardian Ad Litem for Joseph Donner Winsor and Donner Hanson and William Donner Roosevelt, Individually; McCarthy, Lane & Adams and Edward McCarthy, Jacksonville, for Elizabeth Donner Hanson as Guardian Ad Litem for Joseph Donner Winsor and Donner Hanson, appellants.
C. Robert Burns, West Palm Beach, and Redfearn & Ferrell, Miami, for appellees.
HOBSON, Justice.
This is an appeal by defendants from a summary final decree holding that assets of a trust created by Dora Donner during her lifetime passed under her will. Cross-assignments of error have been filed by the plaintiffs, who contend that the chancellor erred in holding that he had no jurisdiction over some of the defendants, the trustee and certain beneficiaries under the trust, who did not answer the complaint.
The essential facts of the case are not in dispute. Dora Donner died in Palm Beach, Florida, on November 20, 1952, leaving a will dated December 3, 1949, which was probated in Palm Beach County. She was formerly a citizen of Pennsylvania, but made her permanent home in Palm Beach County on or about January 15, 1944, and remained domiciled in Florida until she died.
On March 25, 1935, the testatrix executed a trust instrument in which she named the Wilmington Trust Company, a Delaware corporation, as trustee. The trust instrument provided in part as follows:
"Trustee shall pay over the net income of the trust fund unto Trustor, for and during the term of her natural life. Upon the death of Trustor Trustee shall assign, transfer, convey and deliver this trust fund, principal and undistributed income thereof, if any, free from this trust, unto such person or persons and in such manner and amounts and upon such trusts, terms and conditions as Trustor shall have appointed by the last instrument in writing which she shall have executed and delivered to Trustee, or failing such instrument, by her last Will and Testament, or in default of any such appointment then unto the then living issue of Trustor, per stirpes and not per capita."
The trust assets consisted entirely of intangible personalty.
On April 6, 1935, Mrs. Donner executed a power of appointment under the terms of the trust. On October 11, 1939, she executed a new power of appointment, amending the previous power.
On December 3, 1949, (the same day she executed her will, and while domiciled in Florida) Mrs. Donner executed an instrument entitled "Donner * First Power of Appointment" wherein she revoked all previous exercises of the power of appointment under the trust and ordered that certain sums be paid to a different set of beneficiaries.
On July 7, 1950, she executed an instrument entitled "Donner * Second Power of Appointment" amending the instrument of December 3, 1949. This was the last "power of appointment" the testatrix exercised before her death.
In her will, after making certain specific directions and bequests, the testatrix provided in part as follows:
"Fifth: All the rest, residue and remainder of my estate, real personal and mixed, whatsoever and wheresoever the same may be at the time of my death, including any and all property, *381 rights and interest over which I may have power of appointment which prior to my death has not been effectively exercised by me or has been exercised by me in favor of my Executrix, I direct my Executrix to deal with as follows, namely:  "
[Here follow certain directions and the names of residuary legatees, plaintiff-appellees here.] (Emphasis supplied.)
The complaint for declaratory decree in this case was filed for the purpose of determining what passes under the residuary clause of the will quoted above. This determination, of course, requires a study of the trust agreement of March 25, 1935, and the powers of appointment exercised thereunder, to determine whether or not such powers as the testatrix had were "effectively exercised" under the terms of the will. On this issue, the chancellor held in part:
"Concerning the declaration of trust dated March 25, 1935, and particularly the power of appointment dated December 3, 1949, no present interest passed to any beneficiary other than the Trustor (Testatrix). It seems clear to me, from the authorities, that the power of appointment was testamentary in character and did not constitute a valid inter vivos trust appointment. As the appointment had only one subscribing witness, rather than two, as required in Florida, it did not constitute a valid testamentary disposition. Hence, the executrix should receive the assets and dispose of them agreeable to the will under which she was appointed."
After this final decree was entered, a suit which had been brought in Delaware by Elizabeth Donner Hanson, as executrix and trustee under the Donner will (one of the appellants herein) to determine the validity of the trust agreement resulted in a summary judgment of the Court of Chancery of the State of Delaware in and for New Castle County, holding that the trust was valid. An appeal from this judgment is pending in Delaware but, so far as the record here before us shows, has not yet been determined.
Appellants have lodged with us a copy of the Delaware chancellor's opinion and judgment and, on the basis thereof, have moved to remand the instant case with directions to dismiss it, taking the position that the Delaware judgment is dispositive of the main issue raised on this appeal.
We shall first consider the contention of appellants that the circuit court of Palm Beach County erred in holding the trust and the powers of appointment exercised thereunder invalid as testamentary in character. As a preliminary inquiry, it is necessary to determine whether or not jurisdiction existed in the courts of Florida to pass upon the validity of these instruments.
There can be no doubt that the court below possessed substantive jurisdiction to determine this issue. Jurisdiction existed by virtue of the will, which had been duly probated in Florida, the testatrix' domiciliary state. Reference having been made in the will, as we have seen, to powers of appointment, and the question of effective exercise thereof having been properly raised, the chancellor below had no alternative but to examine the trust instrument and documents executed thereunder and declare them valid or invalid. This is to be distinguished from a case wherein questions of administration or validity of a purported inter vivos trust arise absent a will or any reference therein. Cf. Wilmington Trust Co. v. Wilmington Trust Co., 26 Del. Ch. 397, 24 A.2d 309, 311, 139 A.L.R. 1117, wherein the settlor had executed a will "making no reference whatever to the power of appointment conferred on him by the [previously executed] trust agreement * * *" and it was held that the Delaware courts had jurisdiction to determine the validity of trust powers, although the settlor died a domiciliary of another state. In the case now presented, it would have been an abdication or abandonment of jurisdiction, which we would have been obliged *382 to correct, if the chancellor below had failed to answer the question which was duly brought before him for adjudication.
The next question is the source of the applicable law to test the validity of the attempted trust disposition. The trustee, Wilmington Trust Company, is a Delaware corporation with its principal place of business in Delaware. Securities representing the intangible personalty which forms the corpus of the trust are also located in Delaware. The settlor was domiciled in Pennsylvania when she executed the original trust instrument. The first two "powers of appointment", now revoked, were executed while the settlor was domiciled in Pennsylvania. But these considerations alone are insufficient to persuade us that the law of either Delaware or Pennsylvania is applicable, for reasons which will hereinafter appear.
Assuming, for the moment, that this was an inter vivos trust, the only exercises of the power of appointment which could have been intended to create an interest to be enjoyed at the settlor's death were those reflected in the documents of 1949 and 1950. The settlor obviously intended these documents, if any, to make the controlling disposition, for she revoked all previous exercises of the power and even called the 1949 and 1950 papers the "first" and "second" power of appointment respectively, although she had previously executed similar instruments. The chancellor in Delaware, in expressing his opinion that the trust was valid under Delaware law, sanctioned payment to the remaindermen named in these last two powers of appointment. In the last analysis we, too, are concerned with the interests of these remaindermen in our inquiry as to whether or not the instruments which created their interests were effective to shift the trust property out of the estate of the testatrix. We do not question the validity of the beneficial life estate reserved by the settlor.
It is urged upon us that the remaindermen possessed during the life of the settlor a present right to future enjoyment of the trust property. In making this argument, appellants state in part in their brief that:
"* * * since the right to amend is specifically reserved in the Trust Agreement of March 25, 1935, each appointment should be construed as an amendment to and a republication of the original agreement. Therefore, the trust agreement and appointments thereunder must always be construed together." (Emphasis supplied.)
In Henderson v. Usher, 118 Fla. 688, 160 So. 9, 11, we observed that an inter vivos trust usually has its situs at the residence of the creator of the trust, and we were considerably influenced in our consideration of this principle by the case of Swetland v. Swetland, 105 N.J. Eq. 608, 149 A. 50; Id., 107 N.J. Eq. 504, 153 A. 907, which we viewed as "one of the leading cases in this country on the question." In the Swetland case the settlor had amended the trust, but had been domiciled in New Jersey both at the time of his execution of the original trust agreement and the amendment thereto. It was held that New Jersey law applied to test both agreements. The court in the Swetland case rejected the contention that the applicable law as to the trust necessarily followed the settlor whereever he might be domiciled after the trust was executed, and it is unnecessary for us to express any opinion regarding this principle. It is sufficient to observe that in the instant case the last effective acts, if any there were, of the settlor to establish remainder interests under the trust were accomplished while she was a Florida domiciliary, and we consider the last powers of appointment as a republication of the original trust instrument, or as if the trust instrument had been executed while the settlor was domiciled in Florida. We consider this a far more realistic interpretation of these instruments than if we were to rule that the last powers of appointment should be construed to relate back to the date upon which the original trust agreement was executed, because the effect of a "relation-back" view would be to establish an artificially *383 early date for interests which were obviously not intended to be created by the settlor until much later. Hence we must consider the validity of the trust, and the remainder interests it sought to create, under Florida law, Henderson v. Usher, supra, 118 Fla. 688, 160 So. 9. Compare the rule sustaining the power of the domiciliary state to tax, and apply its tax law to, the exercise of a power to dispose of intangibles, although the trust fund and trustee are outside the state. Graves v. Schmidlapp, 315 U.S. 657, 62 S.Ct. 870, 86 L.Ed. 1097; Bullen v. State of Wisconsin, 240 U.S. 625, 36 S.Ct. 473, 60 L.Ed. 830.
The logic of the foregoing analysis is strongly buttressed in the instant case by the fact that the settlor chose, after she had come to Florida, which was to be her last domicile, to make an integrated pattern of arrangements for the disposition of her property. At this period of her life she desired to make final exercise of whatever powers she might have had under the earlier arrangement but was careful to provide in her will for the possible ineffectiveness of such exercise of power, making an unquestionably valid testamentary disposition to settle her entire estate if the doubtful powers of appointment failed.
Having decided that Florida law applies, we are next obliged to apply it. The validity of an attempted inter vivos trust such as this is a matter of first impression in this state. The trust instrument provided, as we have seen, that the settlor would receive all of the net income for life. The settlor reserved to herself the right to amend or revoke the trust agreement in whole or in part at any time. Many powers of the trustee could ordinarily be exercised by it only upon the written direction of, or with the written consent of, the "adviser" of the trust. These powers were the following:
"(b) To sell at public or private sale, exchange for like or unlike property, convey, lease for terms longer or shorter than the trust, and otherwise dispose of any or all property, real or personal, held in the trust fund, for such price and upon such terms and credits as Trustee may deem proper.
"(c) To invest the proceeds of any such sale or sales, and any other money available for investment, in such stocks, bonds, notes, securities and/or other income producing property as may be deemed appropriate for this trust fund, irrespective of the rules of investment applying to trustees under any present or future laws of the State of Delaware or elsewhere.
* * * * * *
"(e) To participate in any plan or proceeding for protecting or enforcing any right, obligation or interest arising from any stock, bond, note or security held in the trust fund, or for reorganizing, consolidating, merging or adjusting the finances of any corporation issuing the same, to accept in lieu thereof any new or substituted stocks, bonds and/or securities, to pay any assessment or any expense incident thereto, and to do any other act or thing that Trustee may deem necessary or advisable in connection therewith."
As "advisor" the settlor named her husband or "such other person or persons as trustor may nominate in writing delivered to trustee during her lifetime". Finally, and very significantly, the settlor reserved to herself the power of appointment, which we have discussed above, with a view to naming beneficiaries to take remainder interests in the trust after her death.
Although any of these reservations of power in the settlor, standing alone, might not have been enough to render the trust invalid, cf. Williams v. Collier, 120 Fla. 248, 158 So. 815, 162 So. 868, wherein we upheld a revocable trust reserving a life interest to the settlor, with remainder payable to named grandchildren, the cumulative effect of the reservations was such that the relationship established divested the settlor of virtually none of her day-to-day control *384 over the property or the power to dispose of it on her death, and the trust was illusory. See Burns v. Turnbull, 294 N.Y. 889, 62 N.E.2d 785; In re Tunnell's Estate, 325 Pa. 554, 190 A. 906; In re Shapley's Deed of Trust, 353 Pa. 499, 46 A.2d 227, 164 A.L.R. 877; In re Hurley's Estate, 17 Pa.Dist. & Co. R. 637; Warsco v. Oshkosh Savings & Trust Co., 183 Wis. 156, 196 N.W. 829; Steinke v. Sztanka, 364 Ill. 334, 4 N.E.2d 472. In Scott, Trusts and the Statute of Wills, 43 Harv.L.R. 521, 529, the author states:
"Suppose that the settlor reserves not merely a life interest and a power to revoke the trust in whole or in part and to modify the trust, but reserves also a power to control the trustee in the administration of the trust. In such a case, there is authority to the effect that the trust is in substance testamentary and is invalid unless declared in an instrument executed in accordance with the requirements of the Statute of Wills."
Another common principle is reflected in Restatement of Trusts, Sec. 56, which reads as follows:
"Where the owner of property purports to create a trust inter vivos but no interest passes to the beneficiary before the death of the settlor, the intended trust is a testamentary trust and is invalid unless the requirements of the statutes relating to the validity of wills are complied with."
Appellants contend that Illustration 8 under Subsection g. of this section is "exactly our case". This illustration reads as follows:
"8. A transfers certain securities to B in trust to pay the income to A for life and upon A's death to convey the securities to such person as may be designated in a letter to be delivered by A to B on the following day. On the following day A delivers a letter to B designating C as the person entitled to receive the securities on A's death. A valid trust for C is created, since an interest passes to C during the life of A."
The above illustration represents the instant trust in some particulars, but is an oversimplification of the facts before us. It relates to a single exercise of a power of appointment, rather than frequently revoked and amended exercises of power, such as appear in the case before us, which would demonstrate that the settlor considered the appointments to be ambulatory in nature and exactly like successive wills or codicils in their operation. The illustration given, moreover, does not consider the element of control, which we have discussed above. This is treated in Sec. 57 of the Restatement, Subsection g. of which reads in part as follows:
"If the settlor reserves a beneficial life estate and power to revoke or modify the trust and such power to control the trustee as to the details of the administration of the trust that the trustee is his agent, the intended disposition so far as it is intended to take effect after his death is invalid unless the requirements of the Statute of Wills are complied with, but the intended trust is valid so far as the beneficial life estate of the settlor is concerned."
Illustration 5 reads as follows:
"5. A, the owner of shares of stock, delivers the certificates to the B Trust Company to hold and deal with as custodian, to receive the income and pay it over to A, and with power to sell the shares and to reinvest the proceeds. In order to carry out these purposes the shares are registered in the name of the trust company. A writes a letter to the trust company directing it to convey the shares on A's death to C, unless A should otherwise direct. A dies. The intended disposition in favor of C is testamentary, and C is not entitled to the shares unless *385 the requirements of the Statute of Wills are complied with."
True it is that in the situation posed in Illustration 5 the action taken by A, the settlor, is somewhat less formal than the action taken by the settlor herein, and while this is a circumstance which would tend to uphold the validity of the instant trust, we do not consider it controlling when weighed against the multiple reservations of power we have discussed.
We re-emphasize that we do not, and need not, hold that the reservation of the power of appointment, or any other factor standing alone, would suffice to invalidate the remainder interests sought to be created under this trust. It is enough to observe that if, as to the remaindermen, this trust is not invalid as an agency agreement, and testamentary as the court below found, it is difficult to understand what further control could be retained by a settlor to produce this result, and the principles to which we have alluded above would lose their meaning. We have been shown no error in the chancellor's ruling on this aspect of the case, which accordingly must be affirmed.
We next consider the contention made on the cross-appeal that the chancellor erred in ruling that he lacked jurisdiction over the persons of certain absent defendants, summoned to appear by constructive service of process. These defendants were the trustee and persons who would benefit under the last power of appointment executed under the trust, and against the will. In Henderson v. Usher, supra, 160 So. 9, we upheld constructive service of a citizen of New York, although the trust "res", consisting entirely of intangible personalty, was physically located in New York, and the trust was administered there by the Chase National Bank of New York, as trustee. We held that constructive service was valid in that state of the record because substantive jurisdiction existed in the Florida court by virtue of construction of a will, which was also involved, the testator having been domiciled in Florida. We observed that it was not essential that the assets of the trust be physically in this state in order that constructive service be binding upon a non-resident where the problem presented to the court was to adjudicate, inter alia, the status of the securities incorporated in the trust estate and the rights of the non-resident therein. It is entirely consistent with the Henderson case to hold, as we do, that the court below erred in ruling that it lacked jurisdiction over the persons of the absent defendants. With this view of the case, we need not consider the contention of cross-appellees that the absent defendants are necessary parties under Martinez v. Balbin, Fla., 76 So.2d 488.
Finally, we mention again the motion to remand on the basis of the decree of the Delaware court. Since we hold that we have jurisdiction of the matter presented, and that Florida law is exclusively applicable thereto, this motion must be denied.
Affirmed in part; reversed in part
TERRELL, Acting C.J., and THORNAL and O'CONNELL, JJ., concur.