585 So.2d 303 (1991)
Jack ALTER, Individually and As Trustee, Appellant,
v.
Sharon ZUCKERMAN and Beverly Kanter, Appellees.
No. 89-2209.
District Court of Appeal of Florida, Third District.
June 25, 1991.
On Motion for Rehearing September 17, 1991.
*304 Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin and Joel Eaton, Miami, for appellant.
Steel, Hector, Davis, Burns & Middleton and Robert W. Goldman, West Palm Beach, for appellees.
Before HUBBART, COPE and LEVY, JJ.
COPE, Judge.
Jack Alter appeals an adverse summary final judgment. The judgment determined that an inter vivos trust created by the decedent, Celia Kahn, was ineffective to transfer the trust corpus to Alter on her demise. As a result, the trust assets were held to be part of Kahn's probate estate, and pass through the residuary clause of the will. We reverse.

I.
In 1977 and 1980, Kahn made two wills which left the majority of her assets to her nephew, Alter. In 1982 she executed a declaration of trust naming herself trustee of a brokerage account at Norstar Brokerage Corporation[1] for the use and benefit of Alter. The instrument was notarized, but did not contain the signature of a second witness.[2] Kahn opened a new brokerage account at Norstar in her name as trustee for the benefit of Alter. She transferred her stock holdings from her existing Norstar account to the new account. Under the terms of the declaration of trust, the trust corpus was to pass to the beneficiary, Alter, upon Kahn's demise.
In 1982 Kahn also opened a bank account at 1st Nationwide Bank naming herself as trustee for the benefit of Alter. The account title referenced a trust agreement dated June 11, 1982. Kahn placed funds in the bank account which were there at her demise.
In 1983, Kahn changed her will. Alter was named personal representative and devisee of Kahn's household goods and personal effects. The residue of the estate was left to appellees Sharon Zuckerman and Beverly Kanter, Kahn's nieces.
Kahn died in 1986. The residuary beneficiaries, Zuckerman and Kanter, petitioned for a determination that the declaration of trust was ineffective to transfer the trust assets to Alter (the trust beneficiary) upon the decedent's demise. Under that theory, the trust assets remained as part of Kahn's estate and passed under the will to the residuary beneficiaries. The residuary beneficiaries initially claimed entitlement to the Norstar account, and later, the 1st Nationwide account as well.
The residuary beneficiaries moved for summary judgment. Relying on the Florida Supreme Court's decision in Hanson v. Denckla, 100 So.2d 378 (Fla. 1956), reversed on other grounds, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), they argued that the inter vivos trust could not transfer the trust assets upon Kahn's demise unless the trust instrument complied with the formalities required for the execution of wills. Those formalities require that a will be executed before two witnesses. It is undisputed that the declaration of trust was signed before one witness  the notary  but not two. Agreeing with that analysis, the court entered summary judgment in *305 favor of the residuary beneficiaries. The court ruled that no assets of the decedent were left in trust by the decedent and that her assets pass through probate in accordance with her last will and testament.

II.
We first consider the Norstar account. The declaration of trust recited that Kahn held the Norstar account in trust for Alter, as beneficiary. The instrument provided that upon Kahn's demise, the successor trustee would transfer all right, title, and interest in the account to the beneficiary absolutely and terminate the trust.[3] Under the terms of the declaration of trust, Kahn retained the right to exercise day-to-day control until her demise, or physical or mental incapacity, and also retained the right to amend or revoke the trust in whole or in part.
In Hanson v. Denckla, the Florida Supreme Court considered the effect of reservations of power by the settlor of a revocable inter vivos trust. 100 So.2d at 383-85. In Hanson the settlor had created an inter vivos trust. The trust instrument gave the settlor the trust income for life. Id. at 380. The settlor reserved the right to designate beneficiaries by the exercise of powers of appointment, as well as the right to amend or revoke the trust agreement at any time. Id. at 383. Although there was a corporate trustee, many of its powers could be exercised only upon the direction of the trust adviser, who was settlor's husband. Id. at 383.
Hanson was decided in 1956. Under the view expressed at that time by the first Restatement of Trusts, the reservation of over-much power in the hands of the settlor would render an inter vivos trust illusory. Section 57 of the first Restatement provided:
Where the settlor transfers property in trust and reserves not only a beneficial life estate and a power to revoke and modify the trust but also such power to control the trustee as to the details of the administration of the trust that the trustee is the agent of the settlor, the disposition so far as it is intended to take effect after his death is testamentary and is invalid unless the requirements of the statutes relating to the validity of wills are complied with.

Restatement of Trusts § 57 (1935) (emphasis added).
Following the first Restatement's approach, the Hanson court reasoned that the settlor's reservation of power had "divested the settlor of virtually none of her day-to-day control over the property or the power to dispose of it on her death, and the trust was illusory." 100 So.2d at 383-84 (citations omitted). This did not, however, signify that the actions of the settlor were entirely meaningless. The trust instrument was treated as having created a valid contractual relationship during the life of the settlor, id. at 382, which as described in the Restatement would be an agency relationship between settlor and trustee. Restatement of Trusts § 57. The death of the settlor would, however, revoke the agency. Those portions of the trust instrument purporting to transfer trust property upon the settlor's demise would be testamentary in nature. Id. Upon decedent's demise, the trust instrument would be ineffective to convey trust property "`unless the requirements of the statutes relating to the validity of wills are complied with.'" 100 So.2d at 384 (quoting Restatement of Trusts § 56). Since in Hanson the court concluded that the critical documents had not been executed in accordance with the formalities for wills, 100 So.2d at 382, no property passed by way of the trust. Id. at 385. The judgment was later reversed on jurisdictional grounds. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).[4]
In 1957 the Restatement (Second) of Trusts was adopted, which modified section 57 significantly. In criticizing the first Restatement, *306 and explaining the reason for the modification contained in Restatement (Second), Professor Scott explained:
The purpose of the Statute of Wills in requiring certain formalities is to prevent fraudulent claims. If the disposition is evidenced by a formal trust instrument, the danger of fraud is not increased by the fact that the settlor may have reserved extensive powers.

... [Restatement of Trusts § 57] made the validity of the disposition dependent entirely on the amount of control reserved by the settlor. It failed to take into consideration the formality or lack of formality evidencing the disposition of the property. A formal trust instrument is very different from an instruction given orally or in a letter. If a trust is formally created, the danger of false claims is no greater because of the reservation of powers of control over the trustee reserved by the settlor, than it would be if no such power had been retained. Accordingly, in the Restatement of Trusts Second that was adopted in 1957, § 57 was modified to read as follows:
Where an interest in the trust property is created in a beneficiary other than the settlor, the disposition is not testamentary and invalid for failure to comply with the requirements of the Statute of Wills merely because the settlor reserves a beneficial life interest or because he reserves in addition a power to revoke the trust in whole or in part, and a power to modify the trust, and a power to control the trustee as to the administration of the trust.

The trend of the modern authorities is to uphold an inter vivos trust no matter how extensive may be the powers over the administration of the trust reserved by the settlor.
1A A. Scott & W. Fratcher, The Law of Trusts § 57.2 at 139-40 (footnote omitted).
In 1969 the legislature enacted a statute pertaining to inter vivos trusts which, with subsequent amendments, is now codified as section 689.075, Florida Statutes (1989). The thrust of the statute is to adopt the position of the Restatement (Second) of Trusts, § 57. While the parties agree on the general purpose of the statute, they disagree on the interpretation of paragraph 689.075(1)(g), which is pivotal for the present case. The statute provides:
689.075 Inter vivos trusts; powers retained by settlor. 
(1) A trust which is otherwise valid, including, but not limited to, a trust the principal of which is composed of real property, intangible personal property, tangible personal property, the possible expectancy of receiving as a named beneficiary death benefits as described in s. 733.808, or any combination thereof, and which has been created by a written instrument shall not be held invalid or an attempted testamentary disposition for any of the following reasons:
(a) Because the settlor or another person or both possess the power to revoke, amend, alter, or modify the trust in whole or in part;
(b) Because the settlor or another person or both possess the power to appoint by deed or will the persons and organizations to whom the income shall be paid or the principal distributed;
(c) Because the settlor or another person or both possess the power to add to, or withdraw from, the trust all or any part of the principal or income at one time or at different times;
(d) Because the settlor or another person or both possess the power to remove the trustee or trustees and appoint a successor trustee or trustees;
(e) Because the settlor or another person or both possess the power to control the trustee or trustees in the administration of the trust;
(f) Because the settlor has retained the right to receive all or part of the income of the trust during his life or for any part thereof;
(g) Because the settlor is, at the time of the execution of the instrument, or thereafter becomes, sole trustee; provided that at the time the trust instrument is executed it is either valid under *307 the laws of the jurisdiction in which it is executed or it is executed in accordance with the formalities for the execution of wills required in such jurisdiction.

(Emphasis added).
We agree with Alter that paragraph (g) creates two alternative tests. If either test is satisfied the validity of the trust will be sustained. Under the first test, the trust instrument need only be executed in accordance with the required formalities for an inter vivos trust. Under the second alternative, the trust instrument will also satisfy the statutory test if executed in accordance with the formalities required for the execution of wills. This interpretation accords with Professor Scott's view that either set of formalities provides adequate safeguards against fraud and provides sufficient assurance that the trust assets will be disposed of in accordance with the settlor's intent.
The residuary beneficiaries argue in essence that the first alternative should, as a matter of Florida law, be interpreted as being coterminous with the second alternative. On the contrary, we will not lightly assume that the two different statutory formulations contained within paragraph (g) are merely redundant. Only one of the two alternatives contained in paragraph (g) refers to the formalities required for the execution of wills. We see no basis on which to read that reference into the other alternative as well. More important, the statutory formulation appears to have been adopted for very sound reasons, as thoroughly expressed by Professor Scott. As the inter vivos trust document complied with the statutory formalities, the summary judgment must be reversed.[5]

III.
The trial court treated the 1st Nationwide account as being covered by the same declaration of trust. The court ruled that the 1st Nationwide account, as well as the Norstar account, would pass as part of Kahn's probate estate. For the reasons already stated, the summary judgment must be reversed with respect to the 1st Nationwide account as well. In view of that fact, we need not reach Alter's alternative arguments with respect to the 1st Nationwide account.[6]
Reversed and remanded.

ON MOTION FOR REHEARING
In her motion for rehearing Sharon Zuckerman argues that the court has misinterpreted section 689.075, Florida Statutes (1989). Zuckerman urges that the dispositive portion of the statute is subsection (4), which states:
This section shall be applicable to trusts executed before or after July 1, 1969, by persons who are living on or after said date. However, the requirement of conformity with the formalities for the execution of wills as found in paragraph (1)(g) shall not be imposed upon any trust executed prior to July 1, 1969.

§ 689.075(4), Fla. Stat. (1989) (emphasis added).
The italicized language indicates that for trust instruments executed prior to July 1, 1969, the formalities for execution of wills need not be complied with. Quoting one commentator, Zuckerman argues: "It would follow, therefore, that any such trust executed after July 1, 1969 in the State of Florida must be executed in accordance with the formalities required for the execution of a will." Belcher, Avoiding Problems under F.S. 689.075, Real *308 Property, Probate & Trust Law Sec. of The Fla. Bar, Action Line Vol. 10, p. 2 (1983).
The short answer to that contention is that it runs counter to the plain language of the statute itself. Paragraph (1)(g) of the statute permits a settlor to serve as sole trustee, "provided that at the time the trust instrument is executed it is either valid under the laws of the jurisdiction in which it is executed or it is executed in accordance with the formalities for the execution of wills required in such jurisdiction." § 689.075(1)(g), Fla. Stat. (1989) (emphasis added). The language relied on by Zuckerman was added by amendment to the statute in 1975. Ch. 75-74, § 1, Laws of Fla. If the legislature had intended to require universal compliance with the statute of wills for the period after July 1, 1969, it could easily have done so. Instead, the 1975 legislature reenacted paragraph (1)(g) intact. Zuckerman's position must therefore be rejected.
An examination of the legislative history of the statute also negates Zuckerman's interpretation. Section 689.075 originated as a proposal for statutory reform by James S. Roth. Compare § 689.075, Fla. Stat. (1969) with Roth, The Revocable Inter Vivos Trust, 43 Fla.B.J. 19, 24-25 (1969); see also D. Lowell & J. Grimsley, Florida Law of Trusts § 11-6 (3d ed. 1984); The Florida Bar, Administration of Trusts in Florida § 2.32 (1981). The legislation was designed to supplant the rules governing trusts which were announced in Hanson v. Denckla, 100 So.2d 378, 383-85 (Fla. 1956), reversed on other grounds, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), thus curing the uncertainty inherent in Hanson's first Restatement-based approach. See Lowell & Grimsley, Florida Law of Trusts § 11-6, at 168; The Florida Bar, Administration of Trusts in Florida § 2.32, at 50.
The 1969 enactment differed in several respects from the present version of the statute. Chapter 69-192, Laws of Florida, provided:
Section 1. Chapter 689, Florida Statutes, is amended by adding section 689.075, to read:
689.075 Inter vivos trusts; powers retained by settlor. 
(1) An otherwise valid trust which has been created by a written instrument shall not be held invalid or an attempted testamentary disposition for any of the following reasons:
(a) Because the settlor or another person or both possess the power to revoke, amend, alter, or modify the trust in whole or in part;
(b) Because the settlor or another person or both possess the power to appoint by deed or will the persons and organizations to whom the income shall be paid or the principal distributed;
(c) Because the settlor or another person or both possess the power to add to, or withdraw from, the trust all or any part of the principal or income at one (1) time or at different times;
(d) Because the settlor or another person or both possess the power to remove the trustee or trustees and appoint a successor trustee or trustees;
(e) Because the settlor or another person or both possess the power to control the trustee or trustees in the administration of the trust;
(f) Because the settlor has retained the right to receive all or part of the income of the trust during his life or for any part thereof;
(g) Because the settlor is, at the time of the execution of the instrument, or thereafter becomes, sole trustee.
(2) When the settlor is made sole trustee, the trust instrument shall be executed in accordance with the formalities for the execution of wills required at the time of the execution of the trust instrument in the jurisdiction where the trust instrument is executed.

(3) The fact that any one or more of the powers specified in subsection (1) are in fact exercised once, or more than once, shall not affect the validity of the trust or its nontestamentary character.
(4) This section shall become effective on July 1, 1969 and shall be applicable to trusts executed before or after said *309 date by persons who are living on or after said date.

Ch. 69-192, Laws of Florida (emphasis added).[1a]
Although the 1969 act embodied the approach taken in the Restatement (Second) of Trusts, § 57, the 1969 statute deviated in one material respect: where the settlor was to be the sole trustee, the instrument was required to be executed in accordance with the formalities for the execution of wills. § 689.075(2), Fla. Stat. (1969). In this respect the statute differed from the Restatement (Second) of Trusts, § 57; under the second Restatement, the fact that the settlor served as sole trustee did not render a disposition testamentary, nor did it require invalidation for failure to comply with the statute of wills. Id. § 57 & comment h.
Lurking in the 1969 act was a potential problem with its effect on preexisting trusts. In the period prior to July 1, 1969 there was uncertainty regarding the validity under Florida law of an inter vivos trust in which the settlor served as sole trustee, but it appears that some such trusts would have satisfied the Hanson v. Denckla and first Restatement tests. See Roth, The Revocable Inter Vivos Trust, 43 Fla.B.J. at 23. An inter vivos trust satisfying the Hanson and first Restatement tests was by definition not testamentary and did not have to comply with the statute of wills. The 1969 act, however, required compliance with the statute of wills whenever the settlor was sole trustee, and the 1969 act applied this requirement to trusts executed before, as well as after, July 1, 1969 by settlors who were still alive as of July 1, 1969. § 689.075(4), Fla. Stat. (1969).[2a] While the 1969 act was in general designed to be ameliorative, subsection (2) held out the possibility of invalidating the testamentary portions of some grantor trusts which would otherwise have been upheld under the first Restatement and Hanson v. Denckla tests. One such case, based on the 1969 statute, was Castellano v. Cosgrove, 280 So.2d 676 (Fla. 1973), to be discussed below.
In 1971 the statute was amended by deleting the requirement for compliance with the statute of wills where the settlor serves as sole trustee, and substituting the following:
Section 1. Paragraph (g) of subsection (1) of section 689.075, Florida Statutes, is amended to read:
689.075 Inter vivos trusts; powers retained by settlor. 
(1) An otherwise valid trust which has been created by a written instrument shall not be held invalid or an attempted testamentary disposition for any of the following reasons:
.....
(g) Because the settlor is, at the time of the execution of the instrument, or thereafter becomes, sole trustee; provided, however, that at the time the trust instrument is executed it is either valid under the laws of the jurisdiction in which it is executed or it is executed in accordance with the formalities for the execution of wills required in such jurisdiction.

Ch. 71-126 § 1, Laws of Fla. (new statutory language italicized).
This amendment brought the statute into line with Restatement (Second) of Trusts, § 57. See id. comment h. The apparent purpose of this amendment was to cure the problem already outlined. As a result of *310 this amendment, a grantor trust would be valid if it was either executed in accordance with the statute of wills or if it was otherwise valid under the laws of the jurisdiction in which it was executed. Thus, a pre-July 1, 1969 inter vivos trust would be upheld if it complied with the requirements of Hanson v. Denckla and the first Restatement  even if the trust instrument had not been executed in conformity with the statute of wills.[3a] This amendment meant, however, that Hanson would continue to supply the rule of decision for pre-July 1, 1969 trusts.
In 1973 the Florida Supreme Court decided Castellano v. Cosgrove, 280 So.2d 676 (Fla. 1973). In that case the 1969 statute[4a] was invoked in order to invalidate six Totten trusts, one of which had been executed before, and five after, July 1, 1969.[5a] The supreme court affirmed the trial court's ruling that the 1969 statute could not constitutionally be applied to invalidate the pre-July 1, 1969 Totten trust.[6a]Id. The court also held that the statute applied only to interests in real estate, not personalty, and therefore did not apply to Totten trusts. Id. at 678. The opinion construed the 1969 version of the statute, without discussion of the 1971 amendment.
In 1975 the legislature again amended the statute. This was done at least in part in response to Castellano. The 1975 legislation provided:
Section 1. Section 689.075, Florida Statutes, 1974 Supplement, is amended to read:
689.075 Inter vivos trusts; powers retained by settlor. 
(1) A trust which is otherwise valid, including but not limited to a trust the principal of which is composed of real property, intangible personal property, tangible personal property, the possible expectancy of receiving as a named beneficiary death benefits as described in s. 733.808, or any combination thereof, and An otherwise valid trust which has been created by a written instrument shall not be held invalid or an attempted testamentary disposition for any one or more of the following reasons:
(a) Because the settlor or another person or both possess the power to revoke, amend, alter, or modify the trust in whole or in part;
(b) Because the settlor or another person or both possess the power to appoint by deed or will the persons and organizations to whom the income shall be paid or the principal distributed;
(c) Because the settlor or another person or both possess the power to add to, or withdraw from, the trust all or any part of the principal or income at one time or at different times;
(d) Because the settlor or another person or both possess the power to remove the trustee or trustees and appoint a successor trustee or trustees;
(e) Because the settlor or another person or both possess the power to control the trustee or trustees in the administration of the trust;
(f) Because the settlor has retained the right to receive all or part of the income of the trust during his life or for any part thereof;
(g) Because the settlor is, at the time of the execution of the instrument, or thereafter becomes, sole trustee; provided that at the time the trust instrument is executed it is either valid under the laws of the jurisdiction in which it is executed or it is executed in accordance with the formalities for the execution of wills required in such jurisdiction.
.....
(4) This section shall be applicable to trusts executed before or after July 1, 1969 by persons who are living on or *311 after said date. However, the requirement of conformity with the formalities for the execution of wills as found in subsection (1)(g) shall not be imposed upon any trust executed prior to July 1, 1969.

Section 2. The amendment of s. 689.075, Florida Statutes, by section 1 of this act is intended to clarify the legislative intent of s. 689.075 at the time of its original enactment, that s. 689.075 applies to all otherwise valid trusts which are created by written instrument and which are not expressly excluded by the terms of such section, and that no such trust shall be declared invalid for any of the reasons stated in subsections (1) and (3) of such section regardless of whether the trust involves or relates to an interest in real property.
... .
Ch. 75-74 §§ 1-2, Laws of Fla., codified as § 689.075, Fla. Stat. (1975).[7]
Plainly, one of the principal objectives of the 1975 legislation was to make clear that the legislature had intended for section 689.075 to cover personalty, as well as realty, from the time of its original enactment in 1969. In addition, however, the legislature again returned to the topic of inter vivos trusts in existence prior to July 1, 1969. Under the 1975 enactment, the requirement for conformity with the statute of wills would not be imposed on trusts executed prior to July 1, 1969. This accomplished two objectives. First, it removed any remaining field of operation for Hanson with respect to trusts existing prior to July 1, 1969. Second, it effectively eliminated any further Castellano-based question about the constitutionality of section 689.075.
Zuckerman argues, however, that her position is supported by the statement of legislative intent found in section 2 of the 1975 amendment (now codified as § 689.075(5), Fla. Stat. (1989)). According to Zuckerman, the section 2 statement of intent is designed to reenact the 1969 version of the statute and in particular the 1969 statute's requirement of compliance with the statute of wills where the settlor is sole trustee. We disagree. Fairly read, section 2 does no more than indicate that the statute had, from the outset, been intended to apply to all written trust instruments, regardless of whether the trust involved real or personal property.[8]
Although we deny the motion for rehearing, we agree that it would be desirable from a planning standpoint that there be an authoritative resolution of the question presented. Accordingly we certify that we have passed upon a question of great public importance:
WHETHER PARAGRAPH 689.075(1)(g), FLORIDA STATUTES (1989), CREATES A SINGLE TEST, OR TWO ALTERNATIVE TESTS, FOR THE VALIDITY OF AN INTER VIVOS TRUST EXECUTED ON OR AFTER JULY 1, 1969, WHERE THE SETTLOR IS THE SOLE TRUSTEE?
Rehearing denied; question certified.
NOTES
[1] Norstar was known as Discount Brokerage Corp. at the time the declaration of trust was executed, but subsequently changed its name. For present purposes it will be referred to as Norstar, although the declaration of trust refers to Discount Brokerage.
[2] The declaration of trust was a standard form Kahn had obtained. She also obtained an opinion from her counsel that the form was valid under Florida law. However, she filled out the form herself. The form had signature spaces for two witnesses, as well as a notary. Only the notary signed. The spaces for additional witness signatures were left blank.
[3] Alter was also designated successor trustee.
[4] The United States Supreme Court found that Delaware, not Florida, had jurisdiction over the trust. The Delaware courts held the trust valid. See generally 1A A. Scott & W. Fratcher, The Law of Trusts § 57.2, at 148 (4th ed. 1987) (criticizing Florida view).
[5] Because the statute is clear we need not reach Alter's alternative argument that he is also entitled to relief under Florida decisions which have in terms, or in effect, distinguished Hanson v. Denckla. See, e.g., Lane v. Palmer First Nat'l Bank & Trust Co. of Sarasota, 213 So.2d 301, 302-04 (Fla. 2d DCA 1968).
[6] This ruling is without prejudice to such further proceedings as may be appropriate with respect to the sufficiency of the pleadings, and any amendment which may be needed, with respect to the First Nationwide account, and such proceedings as may be appropriate with respect to the identity (and effect) of the declaration of trust referred to in the 1st Nationwide account title.
[1a] At a special legislative session in 1969, the act was amended by adding to subsection (2):

Provided, however, that this subsection (2) shall not apply to those accounts, including but not limited to bank accounts, share accounts, deposits, certificate of deposit, savings certificates, and other similar arrangements heretofore or hereafter established at any bank or savings and loan association, by one or more persons, in trust for one or more other persons, which arrangement is, by its terms, revocable by the person making the same, until his death or incompetency.
Ch. 69-1747 § 1, Laws of Fla.
[2a] The proviso in subsection (4) limiting the applicability to settlors living on or after July 1, 1969, was evidently intended to afford an opportunity for those settlors to re-execute any non-conforming trust instruments so as to come into compliance with the 1969 law. See Roth, Rebirth of the Revocable Trust in Florida, 44 Fla. B.J. 82, 84-85 (1970).
[3a] If, of course, a pre-1969 inter vivos trust would have failed under Hanson v. Denckla, then it would also fail under the 1971 version of section 689.075, unless it had been executed in accordance with the statute of wills.
[4a] The settlor had died in September, 1969. Id. at 677.
[5a] The Totten trusts had not been executed in accordance with the formalities for the execution of wills.
[6a] The court opined that retroactive application of the 1969 act would impair the obligation of contract.
[7] In section 1 the new statutory language is in italics; deletions are struck through. See § 11.07(2), Fla. Stat. (1989). Section 2 is entirely new language.
[8] Zuckerman claims that this statement of legislative intent was meant to describe the sole purpose of the 1975 amendment. Section (2), however, does not contain any such limitation. It is evident that the 1975 amendment dealt not only with the personal property issue, but also the applicability of the statute of wills for the period prior to July 1, 1969. The 1975 amendment to the provision dealing with the statute of wills could not be said to reflect legislative intent as of 1969, since the 1975 provision contradicted the 1969 statute on that point.

Zuckerman argues alternatively that paragraph (1)(g) is intended to apply only to non-Florida settlors because the statutory language refers to the validity of the trust instrument "under the laws of the jurisdiction in which it is executed...." § 689.075(1)(g), Fla. Stat. (1989). The statute contains no such limitation and the legislative history also negates such an interpretation. Indeed, if the word "jurisdiction" in the proviso in paragraph (1)(g) means "foreign jurisdiction," then (1) the proviso does not apply to inter vivos trusts executed in Florida, and (2) any such Florida trust is governed by the general requirements of subsection 689.075(1)  which the trusts in the present case satisfy.