In the Matter of HERNANDO HEALTH-CARE, INC., d/b/a Brooksville Regional Hospital and Pinebrook Regional Medical Center, f/k/a Lykes Memorial Hospital, Inc., Debtors.

Bankruptcy Nos. 93–02171–8B1 to 93–02174–8B1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Aug. 19, 1993.

Robert B. Glenn, Tampa, FL, William P. Smith, Chicago, IL, for Continental Cas. Co.

John D. Goldsmith, Tampa, FL, for AMBAC Indem. Corp.

Gerald B. Sternstein, and Frank Ranier, Tallahassee, FL, Jeffrey H. Beck, and Lance H. Baker, Fort Lauderdale, FL, for Hernando County, FL.

Julia Sullivan Waters, Tampa, FL, for Nationsbank, N.A.

David E. Otero, Bill Lamm, Jacksonville, FL, for Barnett Banks Trust Company, N.A.

Spencer H. Gardner, Houston, TX, for Omni–Consortium–Florida, Inc.

John D. Emmanuel, Tampa, FL, for Creditor's Committee.

Patricia Levy Ritsch, Tampa, FL, for Barnett Bank of the Suncoast, N.A.

Debbie Daniel, Controller, Brooksville, FL, Robert A. Soriano, Tampa, FL, for Hernando Healthcare, Inc.

**ORDER ON MOTION BY NATIONS-BANK OF FLORIDA, N.A., AS INDENTURE TRUSTEE, AMBAC INDEMNITY CORPORATION, AND CONTINENTAL CASUALTY COMPANY FOR APPROVAL OF PAYMENTS FROM 1990 RESERVE FUND OR, ALTERNATIVELY, RELIEF FROM STAY**

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on to be heard upon the Motion by NationsBank of Florida, N.A., as Indenture Trustee, AMBAC Indemnity Corporation, and Continental Casualty Company for Approval of Payments from 1990 Reserve Fund or, Alternatively, Relief from Stay. After considering the Motion, memoranda of law, and argument of counsel, and being otherwise duly advised in the premises, the Court finds:

In January 1990, Hernando County, Florida, issued $57 million of health facility revenue bonds pursuant to trust indentures executed by Hernando County, Debtors, and the indenture trustee. Of the $57 million bond issue, $6.4 million was insured by AMBAC. The remaining $50.6 million was in high-yield bonds held beneficially by Continental Casualty Company. Pursuant to various loan agreements and documents, Hernando County loaned the proceeds of the sale of the bonds to Debtors, who used the proceeds to finance certain expansions, renovations, and other needs as health care providers.

The loan between Hernando County and Debtors is evidenced by promissory notes, mortgages, and security agreements delivered to the indenture trustee as assignee for Hernando County. As further security for the bond note, Debtors pledged and assigned their gross revenues to Hernando County. Ultimately, all the documents and rights associated with the indenture, loan agreement, note, mortgage, pledge, and assignment were assigned by Hernando County to the indenture trustee to secure repayment of the bonds. The loan agreement provided that all payments made with respect to the bonds were credited against the sums due under the bond note.

Various reserve and sinking funds were created under the indenture. A Sinking Fund and a Depreciation Reserve Fund were established to provide principal, interest, and premium payments when due on the bonds. In the event neither the Sinking Fund nor the Depreciation Reserve Fund had sufficient funds to make necessary payments on the bonds when due, the Debt Service Reserve Fund was to be utilized. The Debt Service Reserve Fund was funded with $5.4 million of the bond sale proceeds. Debtors hold a reversionary interest in the Sinking Fund, the Depreciation Reserve Fund, and the Debt Service Reserve Fund.

Because Debtors were unable fully to fund the Sinking Fund, the indenture trustee made the scheduled October 1992 interest payments to bondholders out of the Debt Service Reserve Fund. In January 1993, after Debtors failed to replenish the Debt Service Reserve Fund, the indenture trustee declared a default under the indenture and loan agreement and accelerated the principal and accrued interest on the bonds and the bond note. On February 26, 1993, Debtors filed their petitions for reorganization under Chapter 11 of the Bankruptcy Code (11 U.S.C.).

After Debtors filed bankruptcy, the indenture trustee, at the direction of Continental Casualty Company and AMBAC, withdrew $211,960 from the Debt Service

Reserve Fund to make the scheduled April 1993 interest payments to bondholders. The indenture trustee neither sought nor received relief from the automatic stay (11 U.S.C. § 362) prior to withdrawal of these funds from the Debt Service Reserve Fund. Debtors take the position that such withdrawal was in violation of the automatic stay, although Debtors do not seek replenishment of the Debt Service Reserve Fund or imposition of sanctions.

Before the Court is a request by the indenture trustee and others to approve retroactively the withdrawal and authorize withdrawal of additional funds to make interest payments on the Continental Casualty Company bonds in the amount of $2.5 million.

As set out below, the Court grants the Motion and will allow Movants the right to withdraw and utilize the funds in the Debt Service Reserve Fund and determines the prior withdrawal should be authorized and the stay annulled as to that particular transaction.

The gravamen of this Motion involves the rights of Debtors in the Debt Service Reserve Fund. The evidence establishes quite clearly this particular Fund was established from the proceeds of the initial bond issue. The Debt Service Reserve Fund was designed to protect, in the main, bondholders and only to a very limited degree Debtors. Debtors do not have the right to utilize the Fund in any manner except at such time as the bonds and, of course, the other security obligations are satisfied. At that time, any balance in the Debt Service Reserve Fund would be returned to Debtors or, in practicality, probably be used by Debtors to reduce the amount of money necessary to pay off the bonds and other security obligations. Logically, if the bonds could be paid off, this Chapter 11 case would be short-lived. But, such pay-off does not appear imminent.

There is a negative side to prohibiting the indenture trustee from using the Debt Service Reserve Fund at this time. If this Fund is not used to make interest payments on the Continental Casualty Company bonds, Debtors will suffer financially. As Movants suggest:

If the bondholders are oversecured, the Debtors will benefit by a disbursement from the ... [Debt Service Reserve Fund] to pay down the bond indebtedness for two reasons. First, the interest on the [b]onds accrues at a higher rate than interest is earned on the money in the ... [Debt Service Reserve Fund] so that the Debtors are penalized (suffers what is known in bond financing as "negative arbitrage") by a delay in distribution. Secondly, the [i]ndentures and [l]oan [a]greement do not require that the Debtors pay interest on money withdrawn from the ... [Debt Service Reserve Fund]. Accordingly, the Debtors are economically better off if the ... [Debt Service Reserve Fund] is used to pay down the bond indebtedness because less post-petition interest will accrue.

Conversely, if the bondholders are actually undersecured, disbursement from this Fund will have very little effect on Debtors: the parties agree that the post-petition payments due from Debtors to replenish the Debt Service Reserve Fund are not an administrative expense. Debtors do not have a right to use the Fund except in the one instance noted above; and any payment out of the Debt Service Reserve Fund reduces Debtors' liability under the note, mortgage, and security agreement dollar-for-dollar.[1]

■ Although the parties rattle their sabers lightly as to whether the Debt Service Reserve Fund is property of the estate, this Court finds Debtors' interest in the Debt Service Reserve Fund is property of the estate. Section 541 of the Bankruptcy Code is broad enough to encompass Debt-

---

1. The parties have not agreed, nor has the Court decided, whether the bondholders are over- or undersecured with respect to the secured interest under the various documents. Further, the parties have agreed that notwithstanding the distribution out of the Debt Service Reserve Fund, the question of whether these monies are applied to principal or interest under the various mortgage documents remains open. This Court views those inquiries as the easier ones relative to the instant inquiry.

ors' equitable interest, *i.e.*, a reversionary interest in this Fund, notwithstanding its inchoate nature. *United States v. Whiting Pools*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). Clearly, under the law of future interests, Debtors' reversionary interest is vested, though equitable in nature. *See, generally, Doctor v. Hughes*, 225 N.Y. 305, 122 N.E. 221 (1919); *Tankersley v. Davis*, 128 Fla. 507, 175 So. 501 (1937); D.H. Redfearn, Wills and Administration in Florida § 13–19 (6th ed. 1986); C.J. Moynihan, A Preliminary Survey of the Law of Real Property 45 (1940). Since Debtors' reversionary interest in the Debt Service Reserve Fund is property of the estate, this Court has subject matter jurisdiction over the Fund, and this is a core matter. *See*, 28 U.S.C. § 1334(d); 28 U.S.C. § 157; *Celotex Corp. v. AIU Ins. Co. (In re Celotex Corp.)*, 152 B.R. 667 (Bankr.M.D.Fla.1993).

Other courts considering this issue have not had difficulty allowing distribution or giving relief from the automatic stay, despite the fact these types of funds are property of the estate. *See, e.g., United Jersey Bank v. CS Assocs. (In re CS Assocs.)*, 121 B.R. 942 (Bankr.E.D.Pa.1990); *In re Continental Airlines*, 134 B.R. 536 (Bankr.D.Del.1991).

■■■ While some sophisticated issues can be debated concerning the utilization of these types of funds and their relation to the Bankruptcy Code and the Chapter 11 reorganization, the essence of any inquiry involving property of the estate is its benefit to the estate. This Court is unwilling to adopt a *per se* rule that *de minimis* rights in property of the estate is a basis for lifting the automatic stay. Such a rule would require this Court to make constant inquiries into the quantity and quality of interests such as springing executory interests,[2] vested remainders subject to divestment,[3] implied easements,[4] powers of appointment,[5] and the like. Such an inquiry would yield no meaningful result. It is better to acknowledge the interest as property of the estate and measure the interest in terms of benefit to the estate, *i.e.*, what is the debtor's equity in such property and is such property necessary to an effective reorganization. 11 U.S.C. § 362(d). Here, Debtors have a very limited equity in the Fund. Debtors' utilization of the Fund is minimal, and utilization of the Fund for reorganization is likewise minimal. Conversely, there is a significant detriment to the estate if the Fund is not used to make interest payments on the Continental Casualty Company bonds. Even if these considerations establish a clear diversity between interests, there is no doubt that balancing the two alternatives requires this Court to lift the automatic stay and authorize the disbursement conditioned upon the further inquiry of whether the bondholders are oversecured and the allocation of bond payments between principal and interest under the mortgage documents.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion by Nations–Bank of Florida, N.A., as Indenture Trustee, AMBAC Indemnity Corporation, and Continental Casualty Company for Approval of Payments from 1990 Reserve Fund or, Alternatively, Relief from Stay is granted. The automatic stay imposed by Section 362(a) of the Bankruptcy Code is hereby lifted for the sole purpose of allowing the trustee to withdraw $2.5 million from the Debt Service Reserve Fund to be distributed in ac-

---

**2.** The Court, knowing full well any discussion of future interests puts fear in the hearts of most attorneys, must nonetheless acknowledge the existence of these interests. *See Dean v. Crews*, 77 Fla. 319, 81 So. 479 (1919); *Boal v. Metropolitan Museum of Art*, 298 F. 894 (2d Cir.1924); D.H. Redfearn, Wills and Administration in Florida §§ 13–13, 13–14 (6th ed. 1986); C.J. Moynihan, A Preliminary Survey of the Law of Real Property 117–119 (1940).

**3.** *See Scott v. Fairlie*, 81 Fla. 438, 446, 89 So. 128 (1921); C.J. Moynihan, A Preliminary Survey of the Law of Real Property 63–64 (1940).

**4.** *See Deseret Ranches v. Bowman*, 349 So.2d 155 (Fla.1977).

**5.** *See Hanson v. Denckla*, 100 So.2d 378 (Fla. 1956), *rev'd on other grounds*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *Alter v. Zuckerman*, 585 So.2d 303 (Fla. 3d DCA 1991), *aff'd*, 615 So.2d 661 (Fla.1993).

cordance with the bond documents to the holders of the Continental Casualty Company bonds.

DONE AND ORDERED.