***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS with modifications and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
Accordingly, the Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The date of plaintiff's accident is January 19, 1999 which occurred in the course and scope of plaintiff's employment.
2. Plaintiff-employee and defendant-employer are bound by and subject to the North Carolina Workers' Compensation Act. Carrier-defendant Penn Mutual Insurance Company specifically contends that it is not bound by or subject to the North Carolina Workers' Compensation Act.
3. The employment relationship existed between plaintiff and employer at all times relevant to this claim.
4. Plaintiff's average weekly wage is $1,122.44, which yields the maximum compensation rate for 1999 of $560.00.
5. Plaintiff's claim is for benefits based on a construction accident in which plaintiff injured his back.
6. The June 29, 2000 letter from Dr. Daniel Albright, the Department of Insurance 3-page Certificate of Authority for Penn Mutual Insurance Company, and the affidavit and telephone records from Bell South, all of which were submitted to the Commission by plaintiff's counsel's letter of August 25, 2000 and to which carrier-defendant has not objected, are received into evidence and made a part of the evidentiary record.
7. For purposes of this Opinion and Award, the term "plaintiff" is used to refer to Mr. Yoo, who is both plaintiff and defendant-employer.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACTS
1. Plaintiff is a Korean citizen who came to the United States in 1995. He moved to Maryland in late 1997. During this time, plaintiff was self-employed as a siding contractor. Plaintiff's knowledge and use of the English language is fairly limited and he testified at the Deputy Commissioner hearing with the assistance of an interpreter. Plaintiff's wife, Ae Lee, has a better command of the English language and testified at the hearing without the assistance of an interpreter.
2. Plaintiff and his wife lived and worked in Maryland until some time in April of 1998 when they moved to North Carolina. Plaintiff continued to operate his siding business in North Carolina.
3. On January 19, 1999 plaintiff was injured while performing siding work for general contractor JK Siding at a construction project at Avery Park in Garner. Plaintiff sustained an injury to his back when a porch roof collapsed and fell on him.
4. As the result of the injury by accident, plaintiff sustained a burst compression fracture. On January 21, 1999 Dr. Daniel Albright performed a posterior spinal fusion at L1-L4.
5. Plaintiff reached maximum medical improvement as of June 26, 2000 and was assigned a 30% permanent functional impairment to his back by Dr. Albright.
6. As the result of the injury by accident, plaintiff was temporarily totally disabled from any employment from January 19, 1999 until June 25, 1999, when he returned to part-time employment. Upon returning to part-time work, plaintiff earned $277.00 per week. Plaintiff continued working part-time as of the hearing before the Deputy Commissioner.
7. Following the accident, plaintiff filed a workers' compensation claim under his policy with carrier-defendant. Carrier-defendant denied coverage for plaintiff on the basis that his policy did not cover accidents in North Carolina and also on the basis that plaintiff, a sole proprietor, was not individually covered under the relevant policy.
8. Carrier-defendant also moved the Commission to dismiss as a party defendant on the basis of lack of jurisdiction. Carrier-defendant is a foreign corporation headquartered in West Chester, Pennsylvania. Carrier-defendant was licensed to sell workers' compensation insurance in the State of North Carolina at all relevant times. Although carrier-defendant may have ceased writing workers' compensation policies in 1990 or 1991, it can reasonably be inferred, and defense counsel conceded at oral arguments before the Commission, that carrier-defendant continued to pay indemnity and medical compensation benefits in this state at the time of plaintiff's compensable injury by accident.
9. Plaintiff first obtained workers' compensation insurance on March 31, 1998 through BES and Associates (hereafter "BES"), an insurance agency in Waldorf, Maryland. BES issued a binder and eventually coverage under Penn Mutual Insurance Company Policy Number WC-0018031-X 00. One of BES' agents, Dawn Ashby, completed an insurance application for plaintiff based upon information provided by plaintiff. Plaintiff informed Ms. Ashby that he resided in Silver Spring, Maryland, and that he had no employees. Plaintiff testified that he told Ms. Ashby that he primarily worked in Maryland, but occasionally worked in Virginia. Plaintiff testified that he asked Ms. Ashby if he could work in other states and was told he could do so.
10. According to Ms. Ashby, if plaintiff had told her that he worked in other states, she would have listed these other states in Part I of plaintiff's policy application. Ms. Ashby also testified that if plaintiff had advised her of his intention to perform work in states outside Maryland, the response to Question No. 14 on the second page of the application (regarding out of state travel) would have been "yes" instead of "no."
11. Plaintiff's wife called BES in May or June of 1998 and advised the agency that she and her husband had moved to North Carolina. Ms. Ashby and Billie Stachura, the sole owner of BES, testified that the agency never received notice of plaintiff's change of address. The Deputy Commissioner gave greater weight to the testimony of plaintiff and his wife on this issue and found that plaintiff gave notice of his change of address to BES. The Full Commission declines to overrule the credibility determination of the Deputy Commissioner and finds the testimony of plaintiff and his wife credible.
12. The workers' compensation policy in question was for a period from October 7, 1998 to October 7, 1999. The policy identifies the insured as Choong Kwon Yoo with an address in Silver Spring, Maryland. The first page of the policy is the policy Information Page, which includes the following provisions:
 3. A. Workers Compensation Insurance: Part One of the policy applies to the workers compensation law of the states listed here: Md [Maryland]
 3. C. Other states insurance: Part Three applies to the states, if any, listed here: None.
Part Three "Other States Insurance," appearing on page 4 of the policy, provides as follows:
A. How This Insurance Applies
 1. This other states insurance applies only if one or more states are shown in Item 3.C. of the Information Page.
 2. If you begin work in any one of those states after the effective date of this policy and are not insured or are not self-insured for such work, all provisions of the policy will apply as though that state were listed in Item 3.A. of the Information Page.
 3. We will reimbuse you for the benefits required by the workers compensation law of that state if we are not permitted to pay the benefits directly to persons entitled to them.
 4. If you have work on the effective date of this policy in any state not listed in Item 3.A. of the Information Page, coverage will not be afforded for that state unless we are notified within thirty days.
B. Notice
 Tell us at once if you begin work in any state listed in Item 3.C. of the Information Page.
13. Under the provisions in Part Three A.2., if plaintiff had begun work in any of "those states" listed in item 3.C. of the Information Page, the policy would have covered plaintiff's injury. However, no states were listed in Item 3.C.; therefore, this provision does not provide coverage for plaintiff's injury.
14. Pursuant to Part Three A.4., there was coverage for plaintiff's injury if plaintiff/defendant-employer notified defendant-carrier that he was working in North Carolina within thirty days of October 7, 1998, the effective date of the policy. The greater weight of the evidence here shows that as of October 7, 1998, plaintiff was working in North Carolina and had previously provided notice to carrier-defendant through its agent BES in May or June of 1998. This provision is invoked irrespective of whether any states are shown in Item 3.C. of the Information Page.
15. On May 30, 1998, plaintiff's workers' compensation policy was canceled for non-payment of premium. Thereafter, plaintiff, from North Carolina, contacted BES to re-apply for workers' compensation coverage.
16. Plaintiff's policy was canceled again for non-payment effective December 14, 1998. Plaintiff subsequently paid the overdue premium, and the policy was reinstated. Thereafter, plaintiff's policy was again canceled for non-payment on February 14, 1999. Once again, plaintiff paid the overdue premium and the policy was reinstated. Each time the plaintiff made his payments from his address in North Carolina. BES continued to fail to acknowledge plaintiff's change of address.
17. During the application process, Ms. Ashby claims that she asked plaintiff about the extent of coverage that he desired. Since plaintiff advised her that he had no employees, Ms. Ashby made the appropriate notations in plaintiff's application. Ms. Ashby indicated that she specifically asked plaintiff if he wanted to include himself in the coverage under the workers' compensation policy. Ms. Ashby stated that she explained, despite the obvious language barrier, to plaintiff that sole proprietors were normally excluded from coverage under workers' compensation policies in Maryland and that he would have to specifically include himself under the policy if he wanted individual coverage for himself. However, she claims that plaintiff declined to include himself because the premium for the policy would have been more expensive.
18. Plaintiff and his wife both testified that they intended to have a workers' compensation policy that would cover plaintiff and any future employees. Plaintiff testified that he and his wife told Ms. Ashby that he was a contractor and wanted insurance to cover his injury and any employees' injuries. Plaintiff is shown on the policy as an "individual." The General Section of the policy specifically states that a "partner" of an insured partnership employer is insured only in his capacity as an "employer" and not in his capacity as an "employee." The policy fails to put the same limitation on an insured "individual" employer.
19. Ms. Ashby was contacted on three occasions to issue certificates of insurance to companies in North Carolina on behalf of plaintiff. To that end, Ms. Ashby issued certificates of insurance for plaintiff on October 6, 1998, December 4, 1998, and December 18, 1998. Each of these certificates erroneously showed plaintiff's address in Silver Spring, Maryland. However, copies of each of these certificates of insurance were faxed to plaintiff's phone number in North Carolina.
20. On the certificate of insurance from December 18, 1998, there is a block checked which indicates that the "proprietor/partners/executive officers" were excluded from coverage. However, the prior two certificates did not have this box checked, including the certificate of insurance submitted on December 4, 1998 to JK Siding, the job plaintiff was doing at the time of his injury by accident. Ms. Ashby claims that the box was first checked on the December 18, 1998 certificate because that was the first time she noticed this error of omission on the prior certificates of insurance. Previously in her deposition, Ms. Ashby stated that it was an oversight that she did not check the box for "exclusion" in the prior certificates of insurance, but that she did not intend to indicate that plaintiff was included in coverage under the relevant policy.
21. The Full Commission gives greater weight to the testimony of plaintiff and his wife than to that of the defense witnesses. Plaintiff clearly intended to procure workers' compensation insurance to cover himself in case of any on-the-job injury. Furthermore, BES issued certificates of insurance which failed to show that plaintiff was excluded from coverage under the policy, upon which plaintiff and general contractors relied to their detriment.
22. Carrier-defendant is duly qualified to do business in the State of North Carolina.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Carrier-defendant, Penn Mutual, should not be dismissed as a party defendant, as the Industrial Commission has personal jurisdiction over the nonresident carrier-defendant in this case. By filing an application to do business in the State of North Carolina with the North Carolina Department of Insurance, carrier-defendant undoubtedly acted to "purposefully avail(s) itself of the privilege of conducting activities" in North Carolina, thus satisfying the "minimum contacts" requirement.Hanson v. Denckla, 357 U.S. 235, 253, 2 L.Ed.2d 1283, 1298,78 S.Ct. 1228, 1240(1958).
2. "If . . . the meaning of words or the effect of provisions [of an insurance policy] is uncertain or capable of several reasonable interpretations, the doubts will be resolved against the insurance company and in favor of the policyholder." Woods v. Insurance Co.,295 N.C. 500, 506, 246 S.E.2d 773, 777 1978). In this case, the provisions in the policy with carrier-defendant are unclear and ambiguous concerning whether an injury by accident occurring outside Maryland is covered under the policy and whether plaintiff as an individual employee is included or excluded in coverage. The greater weight of the evidence of record shows that carrier-defendant, through its authorized agent BES, knew or should have known that plaintiff was working in North Carolina, based on the number of policy cancellations sent to plaintiff in North Carolina, the notices of change of address from plaintiff's wife's phone calls, and the certificates of insurance faxed to plaintiff's North Carolina residence for North Carolina contractors. Plaintiff gave the notice required by Part Three A.4 of the policy and therefore his work in North Carolina was covered under the policy.Harrison v. Tobacco Transp. Inc., 139 N.C. App. 561, 533 S.E.2d 871
(2000).
3. Construing the ambiguities in the policy in favor of plaintiff, plaintiff was personally covered under the workers' compensation insurance policy. The policy itself does not state whether plaintiff is included or excluded under the policy. The certificate of insurance prepared by BES for the subcontracting job on which plaintiff was injured also failed to indicate whether plaintiff was included or excluded from coverage. The greater weight of the evidence shows that when he purchased the insurance, plaintiff intended to cover himself under the policy.
4. On January 19, 1999, plaintiff sustained a compensable injury by accident arising out of and in the course of this employment. N.C. Gen. Stat. § 97-2(6).
5. As a direct and proximate result of plaintiff's compensable injury, plaintiff was incapable of earning wages which he was receiving at the time of his compensable injury by accident at the same or in any other employment and was entitled to receive temporary total disability compensation in the amount of $560.00 per week from January 19, 1999 until he returned to part-time work on June 25, 1999. N.C. Gen. Stat. § 97-29.
6. As a direct and proximate result of plaintiff's compensable injury, plaintiff's earning capacity was diminished during the period he worked part-time, from June 25, 1999 and continuing up to 300 weeks from the date of injury at the rate of two-thirds of the difference between his pre-injury and post-injury wages. N.C. Gen. Stat. § 97-30.
7. In the alternative, as a result of the compensable injury by accident, plaintiff is entitled to permanent partial disability compensation at the rate of $560.00 per week for 90 weeks for the 30% permanent functional impairment to his back. N.C. Gen. Stat. § 97-31(23).
8. Plaintiff is entitled to choose the more munificent remedy provided by N.C. Gen. Stat. §§ 97-29 or 97-31. McLean v. EatonCorp., 125 N.C. App. 391, 481 S.E.2d 289 (1997).
9. To the extent the same is reasonably designed to effect a cure, give relief or lessen the period of disability, defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his comensable injuries. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee approved below, carrier-defendant shall pay plaintiff temporary total disability compensation at a rate of $560.00 per week for the period from January 19, 1999 until June 24, 1999, when he returned to part-time employment. This amount has accrued and shall be paid in a lump sum.
2. Subject to an attorney's fee approved below, carrier-defendant shall pay plaintiff temporary partial disability compensation at a rate of two-thirds of the difference between his pre-injury average weekly wage of $1,122.44 and his post-injury average weekly wage of $277.00 for the period from June 25, 1999 until he reached maximum medical improvement as of June 26, 2000.
3. Upon reaching maximum medical improvement, plaintiff may elect to continue to receive partial disability compensation at the rate of two-thirds of the difference between his pre-injury and post-injury average weekly wages until he returns to work making wages equal to or greater than his pre-injury wages, or for 300 weeks from January 19, 1999, whichever occurs first. The portion of this amount that has accured shall be paid in a lump sum.
4. Alternatively, carrier-defendant shall pay plaintiff permanent partial disability compensation for his 30% permanent functional impairment to his back for 90 weeks at the rate of $560.00 per week.
4. A reasonable attorney's fee in the amount of twenty-five percent of the compensation due plaintiff is hereby approved for plaintiff's counsel. Said amount shall be deducted from the accrued compensation due plaintiff and paid directly to plaintiff's counsel. For future payments, the equivalent of every fourth check shall be paid to plaintiff's counsel.
5. Carrier-defendant shall pay the costs due the Commission.
This the ___ day of April 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN
LKM/mhb